Filing # 110409491 E-Filed 07/17/2020 01:29:12 PM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO:
DIVISION:

CAPAUL JAMES and
TAMIKA JAMES,

    Plaintiffs,

v.

STAR VAN SYSTEMS, INC.,
PANOV LAZAR and GOVERNMENT
EMPLOYEES INSURANCE COMPANY,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, CaPaul James and Tamika James, sues Defendants Star Van Systems, Inc., Panov Lazar, and Government Employees Insurance Company and alleges:

**Jurisdiction and Venue**

1. This is an action for damages that exceed $30,000.00, exclusive of interest and costs.

2. Plaintiffs are married individuals and at material times were citizens of the State of Florida.

3. Defendant Star Van Systems, Inc. ("Star Van Systems") is an interstate motor carrier doing business in the State of Florida.

4. Defendant Panov Lazar ("Mr. Lazar") is a resident of the Province of Ontario, Canada.

5. Defendant Government Employees Insurance Company ("Geico") was a foreign corporation in the business of providing and selling insurance, including uninsured/underinsured motorist insurance ("UM") in the State of Florida.

6. Venue is proper in this Court under Section 47.011, Florida Statutes, as the tortious conduct that is the subject of this case occurred in Duval County, Florida.

### Facts Regarding Defendants' Role in Interstate Commerce

7. The transportation of goods in interstate commerce constitutes an ultra-hazardous activity that presents substantial dangers to the driving public when not done safely, properly and with due caution. Accordingly, there are number of federal regulations, state statutes, industry standards and local ordinances that govern the qualification, training and retention of professional tractor trailer drivers, the proper maintenance and equipment for commercial motor vehicles, and the safe operation of motor carriers, commercial motor vehicles and professional truck drivers.

8. At all times material hereto, Star Van Systems was an authorized interstate motor carrier authorized to transport goods in interstate commerce and in the State of Florida for profit pursuant to one or more permits issued by the Interstate Commerce Commission, or by the United States Department of Transportation ("USDOT"). Accordingly, Star Van Systems was subject to all state and federal laws, statutes, regulations and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation, Title XXIII of the Florida Statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations ("FM CSR") set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 -Transportation.

9. At all times material hereto, Star Van Systems was regularly engaged in a commercial enterprise that involves the use of motor carriers, commercial motor vehicles and licensed commercial motor vehicle drivers as an integral part of its business. As a result, Star Van Systems had a duty and obligation to the driving public to exercise reasonable care to select safe, competent and conscientious motor carriers, commercial motor vehicles and professional drivers to deliver those goods.

10. Star Van Systems selected and hired Mr. Lazar to operate commercial motor vehicles in interstate commerce as approved by the USDOT to deliver goods to Star Van Systems customers in Florida as well as all over the country. At all relevant times, Mr. Lazar was an unsafe and unqualified commercial motor vehicle operator and that information was readily available to Star Van Systems prior to the crash in question.

11. In return for the privilege to operate commercial motor vehicles on the public highways transporting goods in interstate commerce, motor carriers like Star Van Systems must make certain safety related certifications and verifications to the USDOT. In order to obtain operating authority and get a USDOT Number, Star Van Systems had to submit a Form OP-1 Application for Motor Property Carrier Authority.

12. Each Form OP-1 submitted contained a "Safety Certification," certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that Star Van Systems has access to and is familiar with all applicable USDOT regulations relating to the safe operation of commercial motor vehicles and that Star Van Systems will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

13. More specifically, each Form OP-1 submitted contained a "Safety Certification," certifying to the Federal Motor Carrier Safety Administration that, at a minimum, Star Van Systems:

    a. had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

    b. can produce a copy of the FMCSRs;

    c. had and will have in place a driver safety training/orientation program;

    d. had and will have prepared and maintain an accident register;

    e. is familiar with USDOT regulations governing driver qualifications and had and will have in place a system for overseeing driver qualification requirements;

    f. had and will have in place policies and procedures consistent with USDOT regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;

    g. is familiar with, and had and will have in place a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

    h. must comply with all pertinent Federal, State, local and tribal statutory and regulatory requirements when operating within the United States.

14. Star Van Systems was required to and did submit an MCS-150 form to the US DOT that also contained similar safety certifications signed under penalty of perjury that it was familiar with the FMCSRs.

15. An authorized representative of Star Van Systems swore under penalty of perjury to comply with the above Safety Certifications.

16. At all relevant times, Mr. Lazar was a class A licensed commercial vehicle operator.

17. On June 17, 2019, Mr. Lazar was driving a 2016 Freightliner tractor owned by Star Van Systems bearing VIN number 1UYVS2536BM029806, and pulling a trailer owned, upon information and belief, by Star Van Systems, bearing VIN number 1UYVS2536BM029806 (hereinafter collectively referred to as the "Semi") in interstate commerce for Star Van Systems under its motor carrier authority.

18. Accordingly, Mr. Lazar was subject to all state and federal laws, statutes, regulations and industry standards governing the safe maintenance and operation of commercial motor vehicles including, without limitation, Title XXIII of the Florida Statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations ("FMCSR") set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 - Transportation.

19. At all relevant times, Mr. Lazar was an employee driver of Star Van Systems, was the driver of the tractor involved in the crash operating under Star Van Systems' motor carrier authority, and therefore was employed and/or contracted to perform services for Star Van Systems in its affairs or under Star Van Systems' USDOT operating authority and was subject to Star Van Systems' control or right to control with the knowledge and consent of Star Van Systems, such that Star Van Systems should be considered his actual and statutory employer.

**Facts Regarding the Crash**

20. On June 17, 2019 in Jacksonville, Duval County, Florida, Mr. Lazar negligently operated a semi-truck in the course and scope of his driving for Star Van and crashed into the driver's side of the vehicle that Plaintiff CaPaul James was driving and that Tamika James was a passenger.

5

**Facts Regarding the Uninsured Motorists Policy**

21. Prior to June 17, 2019, Plaintiffs purchased Stacked UM insurance coverage from Geico, providing coverage for injuries to Plaintiffs by a party who did not have sufficient insurance to cover the damages suffered by Plaintiffs. While Geico is in possession of the original complete policy, a copy of the pertinent policy provisions and forms are attached hereto as Exhibit A.

22. All conditions precedent to the filing of this action have occurred or have been waived by Defendants.

### COUNT I – NEGLIGENCE
### AGAINST DEFENDANT PANOV LAZAR

Plaintiffs adopt by reference paragraphs 1 through 22 herein and further state:

21. Mr. Lazar had a duty to operate the semi-truck in a reasonable and safe manner and to abide by all Florida and Federal laws governing the safe operation of semi-trucks.

22. Mr. Lazar breached those duties by:

    a. Operating the subject semi-truck in a negligent and unsafe manner;

    b. Failing to keep a proper lookout while operating the vehicle;

    c. Failing to take evasive action;

    d. Colliding with the vehicle in which Plaintiffs were a driver and a passenger; and

    e. Violating Florida and Federal laws governing the safe operation of semi-trucks.

23. As a direct and proximate result of the aforementioned negligent acts, Plaintiffs have suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of the capacity for the enjoyment of life, incurred medical costs, and lost earnings and the capacity to earn in the future.

24. The injuries sustained by Plaintiffs are permanent and continuing.

WHEREFORE, Plaintiffs demand judgment, including prejudgment interest and costs, against Defendant Panov Lazar, and such other relief as the Court may deem proper.

## COUNT II – NEGLIGENCE
## AGAINST DEFENDANT STAR VAN SYSTEMS, INC.

Plaintiffs adopt by reference paragraphs 1 through 22 herein and further state:

25. Star Van Systems had a duty to ensure that its drivers and vehicles were reasonably safe and complied with all laws, regulations and industry standards concerning the safe operation of commercial motor vehicles in interstate commerce.

26. Upon information and belief, Star Van Systems failed in the above-mentioned duties and was therefore actively negligent in one or more of, but not limited to, the following ways:

    a. Failing to verify and ensure that its driver operated the semi-truck in a reasonably safe manner and abided by all laws governing the safe operation of commercial motor vehicles in violation of 49 C.F.R. §392.1;

    b. Failing to properly train and instruct its driver and its drivers on defensive driving, safe driving, and proper lookout in violation of 49 C.F.R. §383.111;

    c. Failing to properly supervise its driver and identify dangerous and negligent driving behaviors that could have been corrected in time to avoid the crash;

    d. Failing it non-delegable duty to qualify its driver and perform background, driving record, physical fitness to drive and/or character investigations that would have revealed its driver was not qualified to operate a commercial motor vehicle in violation of 49 C.F.R. §391.21 and §391.23; and

7

e. Habitually disregarding state and federal laws and regulations and industry standards stated above, such that it created a culture of danger and zone of risk that was reasonably anticipated to cause injury and death to the traveling public and constituted a dangerous mode of operation.

27. At all relevant times, Mr. Lazar was Star Van Systems' agent, employee, servant and/or independent contractor acting within the course and scope of his agency or employment, under the direct control and for the benefit of Star Van Systems.

28. Further, in that Star Van Systems retained the right to exercise control over Mr. Lazar in connection with the load and Star Van Systems' activities were directed to the details required for the ultimate purpose for which it was hired by the shippers – that is, delivery of a load to its proper destination in a timely fashion – Star Van Systems is vicariously liable for the negligence of Mr. Lazar.

29. Further, in that Star Van Systems permitted Mr. Lazar to operate the semi-truck, which was owned and under Star Van Systems' control, it is vicariously liable under the dangerous instrumentality doctrine for the negligence of Mr. Lazar.

30. As a direct and proximate result of the aforementioned negligent acts, Plaintiffs have suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of the capacity for the enjoyment of life, incurred medical costs, and lost earnings and the capacity to earn in the future.

31. The injuries sustained by Plaintiffs are permanent and continuing.

WHEREFORE, Plaintiffs demand judgment, including prejudgment interest and costs, against Star Van Systems, and such other relief as the Court may deem proper.

## COUNT III
## BREACH OF INSURANCE CONTRACT AGAINST GEICO

Plaintiffs adopt by reference paragraphs 1 through 31 herein and further state:

32. Plaintiffs have a claim based on their UM policy with Geico, which stands in the shoes of Star Van Systems and Mr. Lazar.

33. Plaintiffs have fulfilled all obligations precedent to payment of this claim.

34. Geico has failed to honor its above-referenced contract and policy of insurance with Plaintiffs such that it has failed to acknowledge or pay Plaintiff's claim for benefits for the policy of insurance which is now due and remains unpaid, all to the detriment of Plaintiffs.

35. As a direct and proximate result of the foregoing, Plaintiffs have suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, and the expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of earning capacity. The injuries sustained by Plaintiffs are permanent and continuing within reasonable degree of medical probability, and Plaintiff will suffer such losses in the future.

WHEREFORE, Plaintiffs demands judgment, including prejudgment interest and costs, against Geico.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

s/Matthew B. Baggett
MATTHEW B. BAGGETT
Florida Bar No.: 0015896
Baggett Law, PLLC
9471 Baymeadows Road, Suite 105
Jacksonville, Florida 32256
(904) 396.1100 (Phone)
(904) 404.8346 (Fax)
mbb@baggettlaw.com
mml@baggettlaw.com
*Counsel for Plaintiffs*

### NOTICE OF DESIGNATION OF EMAIL ADDRESS

Counsel Matthew B. Baggett, pursuant to Rule 2.516, Florida Rules of Judicial Administration, hereby designates the address set forth in the signature block above for service by email.

# EXHIBIT A



Tel: 1-800-MILITARY
1-800-645-4827

**GOVERNMENT EMPLOYEES INSURANCE COMPANY**
One GEICO Center
Macon, GA 31295-0001

# Declarations Page
This is a description of your coverage.
Please retain for your records.

**Policy Number: 4465-25-26-27**
**Coverage Period:**
02-27-19 through 08-27-19
12:01 a.m. local time at the address of the named insured.

Date Issued: January 24, 2019

TAMIKA L JAMES AND CAPAUL L
 JAMES
8276 ABBEYFIELD DR
JACKSONVILLE FL  32277-0967

Email Address: tamikajames07@gmail.com

| Named Insured | Additional Drivers |
|---|---|
| Tamika L James | None |
| Capaul L James | |

| Vehicles | VIN | Vehicle Location | Finance Company/ Lienholder |
|---|---|---|---|
| 1 2016 Kia Sorento EX | 5XYPH4A56GG174460 | Jacksonville FL 32277 | Ally Financial |
| 2 2005 GMC YknDnliAWD | 1GKEK63U95J171062 | Jacksonville FL 32277 | |
| 3 2009 M Benz S550 | WDDNG86X59A268186 | Jacksonville FL 32277 | Automobile Acceptance Corp |

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 | Vehicle 3 |
|---|---|---|---|---|
| Bodily Injury Liability | | | | |
| Each Person/Each Occurrence | $25,000/$50,000 | $183.50 | $192.10 | $157.90 |
| Property Damage Liability | $25,000 | $146.70 | $146.70 | $115.30 |
| Personal Injury Protection | Non-Ded/Insd&Rel | $179.70 | $179.70 | $170.70 |
| Uninsured Motorist/Stacked | | | | |
| Each Person/Each Occurrence | $25,000/$50,000 | $85.40 | $170.70 | $196.50 |
| Comprehensive | $500 Ded | $66.30 | - | $167.10 |
| Collision | $500 Ded | $232.20 | - | $504.00 |
| Emergency Road Service | Ers Full | $6.20 | - | - |
| Rental Reimbursement | $30 Per Day | $16.60 | - | $16.60 |
| | $900 Max | - | - | - |
| **Six Month Premium Per Vehicle** | | $916.60 | $689.20 | $1,328.10 |
| **Total Six Month Premium** | | | | $2,933.90 |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

T-B
DEC_PAGE (06-16)  (Page 1 of 2)

Continued on Back
Renewal Policy Page 5 of 60

**Discounts**

| | |
|---|---|
| **The total value of your discounts is** | **$1,262.80** |
| Military (All Vehicles) | $52.20 |
| Seatbelt (All Vehicles) | $88.40 |
| Multi-Car (All Vehicles) | $397.80 |
| Sponsored Group (All Vehicles) | $254.80 |
| Anti-Lock Brakes (All Vehicles) | $110.20 |
| Anti-Theft Device (Veh 1, 3) | $24.90 |
| Passive Restraint/Air Bag (All Vehicles) | $334.50 |

**Contract Type:** A30FL, FAMILY AUTO INSURANCE POLICY
**Contract Amendments:** ALL VEHICLES - A30FL(03-11) A54FL(03-18) A54FLGL(03-18) FLPIP(07-15)

**Unit Endorsements:**  A115 (04-08)(VEH 1); A240 (02-13)(VEH 1,2,3); A431 (05-11) (VEH 1,3); UE316F (02-15)(VEH 1,3)

Countersigned by Authorized Representative



---

### Important Policy Information

-If you have any questions about this policy, about the insurance services we offer, or if you need assistance resolving a complaint please contact GEICO at 1-800-MILITARY or 1-800-645-4827. We can assist you with your personal insurance needs.

-Please review the front and/or back of this page for your coverage and discount information.

-Congratulations!  You have qualified for a Military Discount on your policy. The reduction is reflected in your policy premium.

-You are receiving a $254.80 discount based on your membership in NFCU .

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony in the third degree. GEICO asks that you support us in the battle against insurance fraud by reporting any suspicious activities to GEICO at (800) 824-5404 x3313 or the National Insurance Crime Bureau (NICB) (800) TEL-NICB or www.nicb.org. Your call is free. Your call can be anonymous. You could be eligible for a reward.

-The New Car Discount no longer applies to your 16 KIA.

-Confirmation of coverage has been sent to your lienholder and/or additional insured.

**GEICO**

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

# Florida Family Automobile Insurance Policy

A-30FL (03-11)

# GEICO

**UNINSURED MOTORISTS COVERAGE**
**STACKED**
**FLORIDA**

Policy Number:

Section IV of *your* policy is replaced by the following:

## DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. ***Hit-and-run vehicle*** means a motor vehicle causing ***bodily injury*** to an ***insured*** with or without physical contact with him or with a vehicle he is ***occupying*** at the time of the accident and whose operator or owner cannot be identified; provided the ***insured*** or someone on his behalf:
   (a) Reports the accident as soon as practicable to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
   (b) Files with us as soon as practicable a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person.
2. ***Insured*** means:
   (a) ***You;***
   (b) ***Your relatives;***
   (c) Any other person while ***occupying*** an ***insured auto***;
   (d) Any person who is entitled to recover damages because of ***bodily injury*** sustained by an ***insured*** under (a), (b), and (c) above.

   If there is more than one ***insured,*** our limits of liability will not be increased.
3. ***Insured auto*** is an auto:
   (a) Described in the declarations and covered by the Bodily Injury Liability coverage of this policy;
   (b) Temporarily substituted for an ***insured auto*** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
   (c) Operated by ***you*** or ***your*** spouse if a resident of the same household.

   But the term ***insured auto*** does not include:
   (i) An ***insured auto*** when used to carry passengers or goods for hire, except in a car-pool;
   (ii) An auto being used without the owner's permission; or
   (iii) Under subparagraphs (b) and (c) above, an auto owned by or available for the regular use of an ***insured***.
4. ***Occupying*** means in, upon, entering into or alighting from.
5. ***State*** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.
6. ***Uninsured auto*** is an auto:
   (a) Which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the ***state*** in which the ***insured auto*** is principally garaged at the time of the accident; or
   (b) For which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an ***insured;*** or
   (c) A ***hit-and-run vehicle***.
   (d) This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

   The term ***uninsured auto*** does not include:
   (a) An ***insured auto***;
   (b) a land motor vehicle or trailer operated on rails or crawler treads or located for use as a residence or premises; and
   (c) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under the Uninsured Motorists coverage we will pay damages for ***bodily injury*** sustained by an ***insured*** caused by accident which the ***insured*** is legally entitled to recover from the owner or operator of an ***uninsured auto*** arising out of the ownership, maintenance or use of that auto.

**EXCLUSIONS**

Section IV Does Not Apply:

1. To *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent and such settlement prejudices our right to recover.
2. To *bodily injury* to a person not an *insured*.
3. To benefit any workmen's compensation insurer, self insurer, or disability benefits insurer.
4. To the United States of America or any of its agencies as an insured, a third party beneficiary or otherwise.
5. To any damages for pain and suffering that the *insured* may be legally entitled to recover against an uninsured motorist unless the injury or disease caused by the uninsured motorist accident resulted in:
    (a) Significant and permanent loss of an important bodily function; or
    (b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement; or
    (c) Significant and permanent scarring or disfigurement; or
    (d) Death.
6. To punitive or exemplary damages, regardless of any other provision of this policy.
7. To any liability assumed under any contract or agreement.
8. To damage caused by the *insured* in participation in and/or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether prearranged or organized.

**LIMITS OF LIABILITY**

The limit of liability for Uninsured Motorists coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident. The limit of liability for Uninsured Motorists coverage stated in the declaration as applicable to "each accident" is, subject to the above provision respecting "each person", the total limit of our liability for all damages, including damages for care or loss of services, due to *bodily injury* sustained by two or more persons as the result of one accident.

Subject to the above:

1. The most we will pay for all damages, sustained by one person, other than *you* or *your relative,* as the result of one accident, is the "each person" limit for Uninsured Motorists coverage shown in the declarations.
2. The most we will pay for all damages, sustained by two or more persons, other than *you* or *your relatives*, as the result of one accident, is the "each accident" limit for Uninsured Motorists coverage shown in the declarations.
3. For *bodily injury* to any one person defined as *you* or *your relative* in any one accident, the limit of liability shall be the sum of the "each person" limit for each *insured auto* for which an Uninsured Motorists coverage premium is paid on this policy.
4. For *bodily injury* to two or more persons defined as *you* or *your relatives* in any one accident, the limit of liability shall be the sum of the "each accident" limit for each *insured auto* for which an Uninsured Motorists coverage premium is paid on this policy.

Payments made under 1. and 2. above shall reduce the amount of Uninsured Motorists coverage available under 3. and 4. above.

Payments made under 3. and 4. above shall reduce the amount of Uninsured Motorists coverage available under 1. and 2. above.

5. The limit of liability for Uninsured Motorists coverage shall be over and above, but shall not duplicate the benefits available to an *insured* under any:
    (a) Workers' compensation law;
    (b) Personal injury protection benefits;
    (c) Disability benefits law or similar law; or
    (d) Automobile medical expense coverage.
6. The limit of liability for Uninsured Motorists coverage shall be over and above, but shall not duplicate any amount paid or payable:
    (a) Under any motor vehicle liability insurance coverages; or
    (b) By or on behalf of the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.
7. If there is more than one *insured*, our limits of liability will not be increased.

**OTHER INSURANCE**

Coverage provided by this section is intended to be excess over and above any other valid and collectable liability coverage.

When an *insured occupies* an auto not described in this policy, and not owned by that *insured* or a *relative*, this insurance is excess over any other similar insurance available to the *insured* and the insurance which applies to the *occupied* auto is primary.

If the *insured* has other insurance against a loss covered by the Uninsured Motorists provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

**DISPUTES BETWEEN US AND AN *INSURED***

1. Disputes between an *insured* and us as to damages may be submitted to arbitration. Arbitration must be agreed to in writing between the *insured* and us.

   If arbitration is agreed upon, each party shall select an impartial arbitrator. These arbitrators shall select a third one.

   The cost of the arbitration and any expenses for experts shall be paid by the party who hired them. The cost of the third arbitrator shall be paid equally by the parties.

2. If the *insured* and we cannot agree to arbitrate or agree to a third arbitrator, the *insured* shall:

   (a) Sue the owner or driver of the *uninsured auto* and us in a court of competent jurisdiction. If the owner or driver is unknown, name us as the defendant.
   (b) When suit is filed, immediately give us copies of the suit papers.

3. If the *insured* agrees to settle with another insurer, the *insured* must submit to us in writing by certified or registered mail a copy of the proposed settlement

4. If within 30 days after receipt of the proposed settlement agreement, we do not:

   (a) Approve the proposed settlement and the signing of the full release;
   (b) Waive our subrogation rights; and
   (c) Agree to arbitrate the claim,

   the *insured* shall then file suit against us and the person(s) legally liable.

   The *insured* may not dismiss a defendant from such lawsuit without our prior written consent.

5. Any award against us shall be binding and conclusive against us and the *insured* up to our coverage limit.

**TRUST AGREEMENT**

Whenever we make a payment under this coverage:
1. We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury*.
2. The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.
3. At our written request, the *insured*, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The *insured* will pay us out of the recovery for our expenses, costs and attorney's fees.
4. The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following conditions apply only to the Uninsured Motorists coverage. We will have no duty to provide coverage under this policy, and suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms and conditions below:

1. NOTICE

   As soon as possible after an accident, notice must be given us or our authorized agent stating:

   (a) The identity of the *insured*;
   (b) The time, place and details of the accident; and
   (c) The names and addresses of the injured, and of any witnesses.

   If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2. ASSISTANCE AND COOPERATION OF THE INSURED

   After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us. The *insured* must cooperate with other

reasonable requests for information or assistance made by us. The *insured* may not agree to dismiss any allegedly legally responsible person(s) or organization(s) from any action without our prior written agreement.

3. PROOF OF CLAIM - If requested by us, an *insured* must:

    (a) EXAMINATION UNDER OATH

    Submit to examination under oath by any person named by us when, where and as often as we may reasonably require. This provision includes providing a copy of any documents, forms, records or material requested to be provided as part of the EUO request whether the request for this information is made before, during or after the EUO.

    (b) INDEPENDENT MEDICAL OR MENTAL EXAMINATION

    Submit to examination by doctors, or other health care providers chosen by us, at our expense, where and as often as we may reasonably require. The scope of the examination(s) may be as broad as we may reasonably require, including but not limited to physical and mental examinations.

    (c) DOCUMENT REQUEST

    Timely comply with all requests for information made by us including but not limited to requests for medical, employment, educational, financial and other pertinent records. If requested by us, the *insured* must provide written authorization, in a form acceptable to us, to obtain information and documents requested under this paragraph. In the event of the *insured's* incapacity or death, his representative must comply with this paragraph.

4. ACTION AGAINST US

    Suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms.

5. PAYMENT OF LOSS

    Any amount due is payable:

    (a) To the *insured* or his authorized representative;
    (b) If the *insured* is a minor, to his parent or guardian; or
    (c) If the *insured* is deceased, to his surviving spouse; otherwise
    (d) To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

    We may, at our option, pay an amount due in accordance with (d) above.


We affirm this amendment.

*[signature]*

W. C. E. Robinson
Secretary

*[signature]*

O. M. Nicely
President